

LAURIE F WRIGHT
1672 S Hazel Street
Gilbert, Arizona 85295
480-330-9638

Plaintiff Pro Se

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LAURIE F WRIGHT, a single woman, ) | No.  11-CV-0095 PHX FJM |
| ) | |
| Plaintiff, ) | SECOND AMENDED COMPLAINT |
| ) | |
| vs. ) | |
| ) | |
| CHASE HOME FINANCE, LLC, an ) | |
| Arizona limited liability company; ) | |
| TIFFANY & BOSCO, PA, a professional ) | |
| association; MARK S. BOSCO and ) | |
| JANE DOE BOSCO, his wife; MARK S. ) | |
| BOSCO dba MERS, Inc.; MORTGAGE ) | |
| ELECTRONIC SYSTEM, INC., an ) | |
| organization; CRESTAR MORTGAGE ) | |
| an organization ) | |
| ) | |
| Defendants. ) | |
| ) | |

COMES NOW plaintiff and for her second amended complaint against defendants and each of them and alleges as follows.

### COMMON ALLEGATIONS

1.     This court has jurisdiction of this matter as a diversity case removed to this court by defendant Chase; the matter at issue involves more than the mimimum diversity amount.

2.     Plaintiff at all times was a resident of this county and state.

1

3.      Defendant organizations were and are corporations, LLC's, professional associations and other organizations doing business in this county and state, and otherwise causing the acts to occur which give rise to plaintiff's complaint[1]; all defendants in this matter are referenced as "Chase" unless otherwise indicated.

4.      This suit involves the following described real property in this county and state:

> Lot 115, Replat of Serrano, according to Book 474 of Maps, page 3, records of Maricopa County, Arizona.

more commonly known as 1672 S Hazel Street, Gilbert, Arizona 85296 (hereafter referenced as "the property").

5.      The acts and omissions of the defendants and each of them were done as agent, employee and cofeasor so that the acts and omissions of defendants and each of them as alleged herein after are such as to give rise to joint and several liability.

6.      This matter arises in contract; that in accordance with A.R.S. 12-341.01, and other laws and rules, plaintiff will be entitled to her attorney's fees as and when incurred when she prevails in this matter.

7.      For some time prior to June, 2009, plaintiff owned the property subject to a note and deed of trust to the order of one or more of the defendants, or others not sued herein.

---

1   This second amended complaint contains defendants not in the original complaint, to wit, MARK S. BOSCO and JANE DOE BOSCO, his wife; MARK S. BOSCO dba MERS, Inc.; MORT-GAGE ELECTRONIC SYSTEM, INC., an organization; CRESTAR MORTGAGE, an organization.   One or more of them is a resident of this state. Diversity likely will no longer exist if it ever did since Tiffany and Bosco, a local law firm was an original defendant.   Mark S. Bosco is not simply a formal, perfunctory defendant. See fn. 2 infra.    Plaintiff would move to remand this action to state court.

8.      The property has a fair market value of $180,000.

9.      Plaintiff, who resides in the property with her permanently multiply disabled, adult son, is over the age of 65 years, is on Social Security, is paid by the state in part to care for her multiple-handicapped, adult son, and operates a small business; her son needs 24/7 care, incontinence care, and is totally disabled; the property is specially equipped for her use not only as a residence but to care for her son.

10.     Some time prior to June 1, 2009, plaintiff fell behind one month upon her mortgage as owed to Chase; no defendant declared a default for this delinquency by the time of the events below, commencing at para. 17.

11.     Plaintiff hired a local law firm (Lerner & Rowe) to apply for a mortgage modification for her.

12.     Upon examination of the appropriate facts and her records, the law firm informed her that there was a "good chance" that she would qualify under the law for a loan modification, i.e., a reduced payment on the mortgage (note and deed of trust) on the property, achieved either with a reduction of principal, lower interest rate, or lower payment.

13.     At the time, defendant Chase held a note and deed of trust upon plaintiff's property; it was the Chase note and deed of trust on which plaintiff had fallen one month behind (para. 10 above).

14.     In late 2008, the Congress passed the Emergency Economic Stablilization Act, and amended it later with the American Recovery and Investment Act of 2009; the purposes of these laws were in part to "protect home values" and "preserve homeowneship"; see 12 U.S.C. 5201.

15.     Under these laws the Secretary of the Treasury was given the authority to

establish the Troubled Asset Relief Program ("TARP") (12 U.S.C. 5211); the "TARP" program funded and created the Home Affordable Modification Program ("HAMP").

16.     With TARP, the government obliged all banks and lenders, such as defendant Chase, to participate in good faith in mortgage modification proposals sought by borrowers (here, a note and deed of trust) if in fact the given bank received monies under TARP.

17.     Before plaintiff materially defaulted in her mortgage obligation with defendant Chase, if she ever did, and before any material default had been pronounced or declared by Chase upon that obligation, plaintiff requested of Chase a modification of her mortgage obligation.

18.     The request by plaintiff of Chase for a modification of her mortgage obligation was accepted by said defendant, and that acceptance constituted a new contract between the parties, the subject of which was to re-evaluate the need to continue with the mortgage obligation as originally written, or to modify same.

19.     The acceptance of the modification request, and the commencement of performance of the modification by plaintiff constituted an accord and satisfaction, a new contract, with respect to the original mortgage obligation, and as a new contract, it cured any existing default under the original mortgage obligation, if any, but in any event including the payment she was behind when consulting counsel (para. 10 above).

20.     In entering the contract to modify, Chase agreed with plaintiff a) to allow for three months for plaintiff to pay in lieu of her original payment a trial plan payment of $1,240 (Exhibit A), commencing with the payment of September 1, 2009, at less than what plaintiff had been paying under the original obligation, with those trial payments as made

4

to apply to the underlying debt in her extant mortgage, and b) to change (lower) the original payment, subject to certain qualifications yet to be met which, if unmet, would disqualify plaintiff from any permanent modification beyond the limited trial plan payment period.

21.      After making the trial plan payments as contracted, plaintiff called Chase to ascertain where she was in the modification process; she was told to keep paying the $1,240 monthly trial payment past the originally agreed period.

22.      She did so for months.

23.      Each month from January, 2010, until July, 2010, plaintiff called monthly to find out where she was in the modification process; she was told simply to keep paying the $1,240 payment, and she did.

24.      Plaintiff qualified for a mortgage modification, Exhibit B; the terms of that modification, however, were more onerous than the terms of the original mortgage.

25.   Chase thus breached the contract of modification by a) not considering in good faith a permanent modification as it had agreed to do, b) extending the trial plan beyond its term without explanation or cause (during which time  plaintiff kept paying the $1,240, and c) not crediting the monies paid under the trial plan as extended to plaintiff's obligation under the original note and deed of trust.

26.      On September 2, 2010, a year after the trial plan, part of the modification agreement and contract, defendant Chase, by and through defendant Tiffany and Bosco[2],

---

2    Exhibit D is an assignment of the beneficial interest under the original note and deed of trust to Chase on September 2, 2010, recorded on October 7, 2010.  Chase itself did not own the beneficial interest in the mortgage until the very date of the Tiffany and Bosco letter.   The assignment of the beneficial interest came from the prior owner

did declare plaintiff to be in default under her original mortgage, the contract having been superseded with the contract including the trial plan payment, the default per Tiffany and Bosco commencing with the normal payment due for November 1, 2009, a payment made in fact by plaintiff under the trial plan in the modification contract, and at the agreed-upon lower amount, although that date (November 1, 2009) was a date encompassed in the trial plan period (see page 2, Exhibit A), and which November reduced payment, with many others after that had been paid in fact by plaintiff, had not been credited by Chase to plaintiff's account or byTiffany and Bosco in its declaration of default.

27.    Plaintiff objected to the Tiffany and Bosco letter, Exhibit C, in that it claimed that plaintiff had not paid for approximately eleven months, which was untrue, and she sent to Tiffany & Bosco the proof that she had in fact  paid.

28.    Defendant Tiffany and Bosco, and Chase, ignored the dispute on the amount and the evidence of payment.[3]

29.    The default declaration of Tiffany and Bosco in Exhibit B ignored the new

_____

"MERS as Nominee for Crestar Mortgage".   The officer of MERS signing the assignment is attorney Mark S. Bosco who identifies himself as "Assistant Secretary for MERS, Inc."   (There is no MERS, Inc.; there is, however, a Mortgage Electronic Registration System, Inc.).  Bosco then signed the letter which is Exhibit C stating that he does so as the attorney for Chase.   Bosco was not an officer or employee of MERS, Inc.,or Mortgage Electronic Registration System, Inc.   This is an example of what is now known as "robosigning."

3    A.R.S. 33-807.01 was added by Arizona to its Deed of Trust Act in 2010.  Under it defendant was obliged to first notice plaintiff of her right under state law to mediate or otherwise adust and remedy the claimed default, prior to any filing of foreclosure notice. Upon information and belief, plaintiff never received any such notice. This failure is incorp-orated herein as another breach of the contract which is the note and deed of trust itself.   That requirement varied as a matter of law what a foreclosing lender must do before he has the right to conduct a private forfeiture sale under state law. A.R.S 33-807.01(c)(4) states that the new law does not apply to lenders compliant with HAMP.

contract and invoked the default of the old one, the note and deed of trust as originally written, all in violation of A.R.S. 33-807(A) as construed in <u>Herring v. Countrywide Home Loans, Inc.</u>, 207 WL 2051394 (D. Ariz. 2007), holding that an agreement curing or modifying a default, if itself later breached (here, the modification contract including the trial plan period and obligation) does not entitle the defaulted creditor to return to the superseded agreement and invoke <u>its</u> default upon which to base the claimed default.

30.     Following the letter which is Exhibit B, and upon information and belief, defendants did notice a trustee's sale of plaintiff's property, or per the letter which is Exhibit B, and Exhibit D,  will be doing so.[4]

31.     A trustee's sale under the Arizona Deed of Trust statutes, A.R.S. 33-801 <u>et seq.</u>, must conform to state law [<u>Perona v. Stark</u>, 114 Ariz. 570, 562 P.2d 743 (App. 1977; <u>Kammert Bros. Enter., Inc. V. Tanque Verde Plaza Co.</u>, 102 Ariz. 301, 428 P.2d 678 (1967)]; the statutory right to private sale "exists as a statutory duty [or right]. . . [only to be] . . . exercise[d] fairly and in good faith"; <u>Boaz v. Latson</u>, 580 S.E.2d 572, 577 (Ga. Ct. of App. 2003); a foreclosing creditor must act equitably and fairly; <u>Arizona Coffee Shops v. Phoenix Downtown Parking Ass'n</u>, 95 Ariz. 98, 387 P.2d 801 (1963) and Cammack, <u>Ins and Outs of Foreclosure</u>,3rd Ed., sec. 4.2.5, p. 4-8; a lack of good faith.

32.     All of the above allegations are incorporated into each of the following claims

---

4   In late 2010, plaintiff filed a Chapter 7 bankruptcy, now concluded with a discharge, Cause No. 10-bk-25922.  Plaintiff, retaining in the bankruptcy Tiffany and Bosco, filed a motion to lift the automatic stay in that proceeding for Chase, alleging that it wanted the stay lifted relative to the property "for the purpose of foreclosing its Deed of Trust against the Debtor's [plaintiff's] interest" in the property at issue; see Dkt. No. 24, filed Oct. 24, 2010.

for relief.

33.    Plaintiff demands a trial by jury.

### FIRST CLAIM FOR RELIEF

#### (Breach of Contract)

34.    Defendant Chase breached the modification contract with plaintiff, including the provisions of the trial plan period, by failure to credit payments, commencing the process of forfeiture without there being a material, declared, non-waived, or actionable default, and failure to provide a fair and equitable evaluation for a modification[5] of the original mortgage between the parties.

35.    Plaintiff has completed all conditions and obligations incumbent upon her to entitle her to fair consideration by Chase for a modification under the modification contract

36.    The breaches of contracts by Chase have materially damaged plaintiff in an amount to be determined, but including the loss of her credit, legal expenses, being obliged to file a

bankruptcy proceeding to forestall forfeiture, and in other respects not fully determined or manifest as yet.

WHEREFORE, plaintiff prays the judgments and orders of this court as follows:

a.      That this court grant plaintiff her special and compensatory damages as they may appear;

b.      For her attorneys fees incurred herein in accordance with A.R.S. 12-

---

5   Exhibit B is the modification as approved by Chase.  It provides for a shorter term on the overall mortgage, and hence a higher payment.  It increased the principal amount due, and it failed to give plaintiff credit for anything paid under the trial plan period.

341.01 and her paralegal fees in accordance with A.R.S. 12-341.02 as they may appear;

      c.     For her costs incurred herein; and,

      d.     For such other and further relief as may be just and proper in the premises.

SECOND CLAIM FOR RELIEF

(Injunctive Relief/Declaratory Relief)

37.     The allegations in the First Claim For Relief are incorporated herein by this reference.

38.     Plaintiff refused and did not sign Exhibit B as tendered by Chase as a modification and did so for the reasons in footnote 5 above (pg. 8).

39.     Chase has unreasonably construed this refusal as a rejection by plaintiff of an overall modification, and considers this refusal to be a breach of that modification contract by plaintiff.

40.     A genuine question exists whether Chase breached the contract between the parties and breached it materially by failing to credit monies paid, not abiding by the terms of the modification contract, and not fairly considering plaintiff for modification notwithstanding plaintiff's full compliance with the modification contract including the trial plan payment obligation.

41.     Chase has threatened to foreclose on the property, see footnote 4 above (pg. 7).

42.     Should that foreclosure occur, plaintiff is without an adequate remedy at law and will lose her home and property.

43.     In the premises, Chase has acted in equitably.

9

44.    Plaintiff will be irreparably harmed if her home is foreclosed.

45.    This action presents an case and controversy.

WHEREFORE, plaintiff prays the judgments and orders of this court as follows:

a.    That this court restrain and enjoin defendant Chase from foreclosure or forfeiture until such time as it comes before this court with clean hands, demonstrates that it has not violated the contract between the parties;

b.    Additionally, this court should enter its declaratory order that Chase, has breached the modification contract in all of the particulars above;

b.    For her attorneys fees incurred herein in accordance with A.R.S. 12-341.01 and her paralegal fees in accordance with A.R.S. 12-341.02 as they may appear;

c.    For her costs incurred herein; and,

d.    For such other and further relief as may be just and proper in the premises.

THIRD CLAIM FOR RELIEF

(Violation of the Arizona Deed of Trust Act)

46.    Chase has violated the Arizona Deed of Trust Act.

47.    Specifically,

a) it has noticed a default in a mortgage obligation wrongfully and done with and through persons without knowledge of the facts, if any, of that default; see the allegations in footnote 2 above (pg. 5), and accompanying text;

b) by failing to abide by the terms of A.R.S. 33-807.01; see footnote 3 (pg. 6) above and accompanying text;

c) by declaring a default on a contract, the terms of which were

10

superseded by an new contract, the contract of modification; see A.R.S 33-807 and
Herring v. Countrywide Home Loans, Inc., 207 WL 2051394 (D. Ariz. 2007), and para. 29
above; and

            d) by seeking forfeiture and foreclosure with unclean hands.

48.     These breaches of contracts have materially damaged plaintiff in an amount
to be determined, but including the loss of her credit, legal expenses, being obliged to file
a bankruptcy proceeding to forestall forfeiture, and in other respects not fully determined
or manifest as yet.

49.     The acts of defendants were willful, wanton, and done with an evil mind and
hand so as to harm plaintiff and so as to be deserving of the assessment of exemplary and
punitive damages.

50.     A reasonable sum of exemplary and punitive damages is the amount of
$1,000,000.

WHEREFORE, plaintiff prays the judgments and orders of this court as follows:

        a.     That this court grant plaintiff her special and compensatory damages
as they may appear;

        b.     For the additional sum for exemplary and punitive damages in the
amount of $1,000,000;

        c.     For her attorneys fees incurred herein in accordance with A.R.S. 12-
341.01 and her paralegal fees in accordance with A.R.S. 12-341.02 as they may appear;

        d.     For her costs incurred herein; and,

        e.     For such other and further relief as may be just and proper in the
premises.

11

FOURTH CLAIM FOR RELIEF

(Violation of the Covenant of Good Faith and Fair Dealing)

51.     The modification contract constitutes a contract between the parties.

52.     That contract contains a Covenant of Good Faith and Fair Dealing.

53.     Defendants have violated that Covenant all to the foreseeable and material damage of plaintiff consisting in part of the matters in the foregoing three claims for relief and their references, which three claims are incorporated herein; without limitation of the foregoing that violation of good faith also includes:

a) defendant Chase's commencement of a forfeiture at a time when defendant Chase itself did not own the beneficial interest in the deed of trust;

b) Chase having at the outset no intent to meaningfully consider a modification as evidenced by luring plaintiff into thinking that upon successful completion of the trial plan, she would be considered for a lower mortgage payment;

c) threatening forfeiture, causing plaintiff to file a bankruptcy proceeding to forestall same, and then not recording any Notice of Sale (and if at this writing there is one noticed, plaintiff has received no notice thereof);

54.     The acts of defendants were willful, wanton, and done with an evil mind and hand so as to harm plaintiff and so as to be deserving of the assessment of exemplary and punitive damages.

55.     A reasonable sum of exemplary and punitive damages is the amount of $1,000,000.

WHEREFORE, plaintiff prays the judgments and orders of this court as follows:

a.      That this court grant plaintiff her special and compensatory damages

12

as they may appear;

      b.    For the additional sum for exemplary and punitive damages in the amount of $1,000,000;

      c.    For her attorneys fees incurred herein in accordance with A.R.S. 12-341.01 and her paralegal fees in accordance with A.R.S. 12-341.02 as they may appear;

      d.    For her costs incurred herein; and,

      e.    For such other and further relief as may be just and proper in the premises.

Dated this 13th day of July, 2010.

LAURIE F WRIGHT

Investor Loan # _____

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: **SEPTEMBER 01, 2009**
Borrower ("I")[1]:  **LAURIE F WRIGHT**
Lender ("Lender"): **CHASE HOME FINANCE LLC**
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **November 28, 2006**
Loan Number: **1914107602**
Property Address ("Property"): **1672S HAZEL ST, GILBERT, ARIZONA 85296**

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer").  I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.  This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.　　**My Representations.**  I certify, represent to Lender and agree:

A.　　I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.　　I live in the Property as my principal residence, and the Property has not been condemned;

C.　　There has been no change in the ownership of the Property since I signed the Loan Documents;

D.　　I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

E.　　Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

F.　　If Lender requires me to obtain credit counseling, I will do so.

G.　　If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Plan.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. )PMC modified 8/09 v1  (page 1



EXHIBIT A

2. **The Trial Period Plan.** *On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S.* **$1,240.00**.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,240.00 | 09/01/2009 |
| 2 | $1,240.00 | 10/01/2009 |
| 3 | $1,240.00 | 11/01/2009 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan;

B. Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C. If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the lender may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D. The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3. **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If I comply with the

.Please use the temporary coupons below during your trial modification period and be sure to include your loan number on your chec[ ]
If you have already remitted some payments or have set up electronic payments for future payments under the trial plan, plea[ ]
disregard these temporary coupon(s) for those months.

If you prefer to make your payment by phone, or have any questions about these temporary coupons, please call us at **(800) 548-791**[ ]
During your trial modification period, we are waiving any telephone payment fees and can schedule your payments in advance to he[ ]
make it easier to keep your trial plan current. If you loan is in foreclosure, certified funds are required.

Additionally, you may not receive statements during the trial modification months. Normal billing statements reflecting the modifie[ ]
terms will resume once your trial modification is effective.

✂ Cut Here ————————————————————————————————————————————————————————

For customers who have received a discharge in bankruptcy, or who are subject to the protections of an automatic stay in a bankruptcy proceeding, this notice is for
information only and is not a demand for payment. Please be advised that principal curtailments that may be applied with this payment cannot be reversed.

DO NOT SEND CASH

Trial Period Payment #4 (Modification Continuation
Payment)
LAURIE F WRIGHT

| | | |
|---|---|---|
| Loan Number: | 1914107602 | |
| Payment Due: | **$1,240.00** | **CHASE PAYMENT PROCESSING** |
| Due Date: | **DECEMBER 01, 2009** | **P.O. BOX 78420** |
| | | **PHOENIX, AZ 85062-8420** |



Loan Number    1914107602

**CHASE HOME FINANCE LLC (OH4-7353)**
**3415 VISION DRIVE**
**COLUMBUS, OH 43219-6009**

JULY 06, 2010

LAURIE F WRIGHT
1672 S HAZEL ST
GILBERT, ARIZONA 85296

We Want to Help You Stay in Your Home
Account:   1914107602  (the "Loan")
Property Address:   1672 S HAZEL ST
                    GILBERT, ARIZONA 85296  (the "Property")

Dear Mortgagor(s):

Chase Home Finance LLC ("Chase") has reviewed your request for a Loan Modification, and we are pleased to enclose a Loan Modification Agreement ("Agreement") for your review and signature.  **This Agreement will allow you to bring your Loan current and continue making the new monthly payment for the remainder of the loan term (which may be extended).**  For more information regarding the Agreement, please see the following:

Terms of the Agreement

The total amount remaining due to modify your Loan is **$0.00**.  This amount is itemized below.  This amount includes late charges, foreclosure fees, property inspection fees, plus any other miscellaneous fees previously discussed.  Chase Home Finance LLC reserves the right to adjust this figure and refuse any funds which are insufficient for any reason, including but not limited to additional disbursement(s) made by Chase between the date of this statement and our receipt of the funds.

| | | |
|---|---|---|
| Initial Payment Contribution | $ | 496.46 |
| Less Funds Held in Suspense | $ | 496.46 |
| Total due | $ | 0.00 |

If you have submitted two or more NSF checks to Chase within the past six months, certified funds are required for your loan modification payments.

The Unpaid Principal Balance of your Loan will be adjusted as follows:

| | | |
|---|---|---|
| Current Unpaid Principal Balance | $ | 244,218.59 |
| Interest | $ | 12,650.33 |
| Escrow Advance[1] | $ | 1,182.63 |
| Recoverable Balance, Foreclosure/Bankruptcy Costs (If applicable)[2] | $ | 14.00 |
| Less Credits | $ | 496.46 |

[1] Funds that Chase has advanced on your behalf to pay taxes and/or insurance premiums or other escrow items.
[2] These are servicing expenses and/or fees (such as NSF fees) that have been assessed to your account.

WF110

Page 1 of 3
V3 03-22-10


3 + 0 3 + 1 9 1 4 1 0 7 6 0 2 + 1 + 5 0

EXHIBIT    B

Loan Number     1914107602

suspend any foreclosure activities so long as I comply with the terms of the Loan Documents, as modified by this Agreement. The Loan Documents will be modified, and the first modified payment will be due on the date set forth in this Section 2:

A. The Maturity Date will be: **DECEMBER 01, 2036**.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts towards taxes, insurance, or other assessments. The new principal balance of my Note is **$257,569.09** (the "New Principal Balance").

C. The Interest Bearing Principal Balance will re-amortize over **316 months**.

   Interest will begin to accrue as of **AUGUST 01, 2010**. The first New monthly payment on the New Principal Balance will be due on **SEPTEMBER 01, 2010**, and monthly on the same date thereafter.

   My payment schedule for the modified Loan is as follows:

   I promise to pay interest on the New Principal Balance at the rate of **6.250%** annually. I promise to make consecutive monthly payments of principal and interest in the amount of **$1,663.73**, which is an amount sufficient to amortize the New Principal Balance over a period of **316 months**.

   The above terms in this Section 2.C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to provisions for an adjustable or step interest rate.

D. I agree to pay in full (i) the New Principal Balance, and (ii) any other amounts still owed under the Loan Documents, by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire New Principal Balance, or the Maturity Date.

E. I will be in default if I do not (i) pay the full amount of a monthly payment on the date it is due, or (ii) comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the New Principal Balance will be the rate set forth in Section 2.C.

3. **Additional Agreements**. I agree to the following:

   A. That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

   B. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other

Loan Number   1914107602

payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C.   That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

D.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F.   That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

G.   If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H.   All payment amounts specified in this Agreement assume that payments will be made as scheduled.

I.   If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

J.   That in agreeing to the changes to the original Loan Documents as reflected in this

WF101 V2 2-23-10 LOAN MODIFICATION AGREEMENT - CHAMP   ver. 07_03_2010_06_36_22   Page 3 of 5 pages

Loan Number   1914107602

Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

K. That MERS holds only legal title to the interests granted by the Borrower in the mortgage,
   but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling the mortgage Loan.

L. I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

3 + 0 3 + 1 9 1 4 1 0 7 6 0 2 + 1 + 5 0



**TIFFANY**
**& BOSCO**
— P.A. —

2525 EAST CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6035
FACSIMILE: (602) 255-0192

**Financial Services**

**Attorneys at Law**

| | | |
|---|---|---|
| Mark S. Bosco | Beth A. Heath | Matthew H. McKinney |
| Michael A. Bosco, Jr. | Richard G. Himelrick | Tracy S. Morehouse |
| Lance R. Broberg | Dustin C. Jones | Kevin P. Nelson |
| Darren T. Croe | Christopher R. Kaup | Richard E. Oney |
| David L. Case | Robert V. Kerrick | Dow Glenn Ostlund |
| J. James Christian | Pamela L. Kingsley | James P. O'Sullivan |
| J. Daryl Dorsey | Todd T. Lenczycki | Jon M. Paladini |
| Dorian L. Eden | Stephen P. Linzer | Alexander Poulos |
| Tina M. Ezzell | May Lu | Robert A. Royal |
| William H. Finnegan | Leonard J. Mark | Sean P. St. Clair |
| William M. Fischbach III | J. Lawrence McCormley | Shahpar Shahpar |
| Bradley P. Forst | Leonard J. McDonald | William J. Simon |
| | | Michael E. Tiffany |

*Fax: 602*
*253*
*0176*   *att*
*Samantha*

September 2, 2010

**VIA E-MAIL**
Laurie F. Wright
1672 South Hazel Street
Gilbert, AZ 85296

      RE:    Chase Home Finance LLC v. Wright
             Notice of Default and Acceleration
             Property Address:  1672 S Hazel St, Gilbert AZ 85296
             Our File No. 10-24221
             BK Case No: 2:10-bk-25922-RJH

Dear Laurie F. Wright

      The purpose of this letter is to provide you with written notice, pursuant to Arizona Bankruptcy LR 4001-1(b) that your client is in default post petition.  This communication is required pursuant to the above-mentioned local rule by the U.S. Bankruptcy Court of Arizona and therefore, is in no way a violation of the automatic stay.

      This letter is to advise you that our office has been retained by Chase Home Finance LLC, beneficiary of the Deed of Trust, which is a lien on the subject property.

      Chase Home Finance LLC is committed to helping homeowners remain in their homes. This commitment involves numerous loan modification and home retention programs, as well as multiple Homeownership Centers throughout the United States.  If your client is interested in a possible loss mitigation program, please contact the Bankruptcy Loss Mitigation team at (888) 332-3412 to start the process.

      The following is a breakdown of the amount due:

           11 Monthly Payments(s) at $1,819.89      $20,018.79
           (November 1, 2009 - September 1, 2010)
           Escrow Shortage               $1,182.63
           Attorneys Fees                 $400.00

**EXHIBIT**    *C* 

Pro Se
Our File No. 10-24221
September 2, 2010
Page Two

| | |
|---|---|
| Accrued Late Fees | $1,173.00 |
| Suspense Amount | ($1,736.46) |
| Total | $21,037.96 |

Please contact our office within ten (10) business days from the date of this notice, should your client wish to either immediately cure the default or desire to be considered for a possible *loan modification and home retention program. Should our office not receive a response from you by September 15, 2010, our office will immediately proceed with a Motion for Relief on September 16, 2010.*

Please contact our office if you have any questions.

Very truly yours,

Tiffany & Bosco, P.A.

Mark S. Bosco

MSB/SMChittenden

*Proof of payments*

Courtesy of Great American
Title Agency, Inc.

OFFICIAL RECORDS OF

Unofficial
Document

Roc
10-7-10
2010-0873 884

RECORDING REQUESTED BY:
No Title Liability

WHEN RECORDED MAIL TO:
Chase Home Finance LLC
800 Brooksedge Boulevard Westerville
Attn:  Foreclosure Dept.
Westerville OH 43081

T&B NO.:  10-24221
MIN NO.:
APN: TBD

## CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **Chase Home Finance LLC** all beneficial interest under that certain Deed of Trust dated **11/23/2006** executed by **Laurie F Wright, a single woman** Trustor, to  **Michael A. Bosco, Jr.**  Trustee, and recorded on  **11/28/06**  as Recording No./Book-Page **20061551931**  of Official Records of  **Maricopa** County, AZ describing the land therein:

**AS PER DEED OF TRUST MENTIONED ABOVE.**

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

Effective Date: 09/02/2010

**MERS as Nominee for Crestar Mortgage**

By : Mark S. Bosco
It's:  **Assistant Secretary for MERS, Inc.**

STATE OF ARIZONA
COUNTY OF MARICOPA

On <u>October 4</u>, 2010, before me, <u>Paula  Gruntmeir</u>, a Notary Public for said State, personally appeared <u>Mark S. Bosco</u> personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of
the State of ARIZONA that the foregoing is true and correct.

OFFICIAL SEAL
PAULA GRUNTMEIR
NOTARY PUBLIC   State of Arizona
MARICOPA COUNTY
My Comm. Expires Oct. 23, 2011

WITNESS my hand and official seal

Signature

**EXHIBIT  D**