**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laurie F. Wright, | No. CV 11-00095-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Chase Home Finance, LLC, | |
| Defendant. | |

The court has before it defendant's motion to dismiss second amended complaint (doc. 19), plaintiff's response (doc. 26) and motion for extension of time to file response (doc. 27), and defendant's reply in support of its motion to dismiss (doc. 29). Plaintiff's response was filed two days after the deadline, however defendant appears neither to oppose nor be prejudiced by the late response. Therefore, **IT IS ORDERED GRANTING** plaintiff's motion for extension of time to file response (doc. 27) nunc pro tunc.

Plaintiff entered into a mortgage loan transaction, secured by a deed of trust, with defendant Chase to purchase residential property in Gilbert, Arizona. Sometime prior to June 1, 2009 plaintiff fell one month behind on her mortgage. Plaintiff sought a mortgage modification from defendant pursuant to the Home Affordable Mortgage Program ("HAMP"). In September 2009, defendant enrolled plaintiff in the HAMP Trial Period Plan. Under this plan, plaintiff's monthly mortgage payments were reduced temporarily to $1,240 while she was considered for a permanent loan modification. After making the payments as

1  outlined in the TPP, plaintiff alleges she called defendant to determine the status of her loan
2  modification request. Defendant told plaintiff to keep making payments in the amount listed
3  on the TPP. Plaintiff continued to make payments for at least seven months. In July 2010,
4  defendant sent plaintiff a proposed loan modification agreement. Plaintiff claims that the
5  modification was worse than her original loan terms because it provided for a shorter term
6  on the mortgage, higher monthly payments, an increase of the principal amount, and failed
7  to credit plaintiff for payments made during the trial period. Plaintiff refused to sign the loan
8  modification agreement.

9        On September 2, 2010, plaintiff claims that defendant declared plaintiff to be in
10 default under her original mortgage. Plaintiff received a letter from defendant's counsel
11 dated September 2, 2010 stating that she had not paid her mortgage for approximately eleven
12 months during the period between November 2009 and September 2010. Plaintiff alleges
13 that she sent counsel proof that she had made payments in accordance with the terms of the
14 TPP. In late 2010, plaintiff filed Chapter 7 Bankruptcy. In October 2010, defendant filed
15 a motion to lift the automatic stay in plaintiff's bankruptcy so that defendant could initiate
16 foreclosure. The bankruptcy has since been discharged. Plaintiff claims that defendant has
17 threatened foreclosure, and has or will be noticing a trustee sale of plaintiff's property.

18       Plaintiff originally filed this action in the Superior Court of Arizona in Maricopa
19 County. Defendants removed the action on the basis of diversity and federal question
20 jurisdiction. Plaintiff's First Amended Complaint ("FAC") was dismissed without prejudice
21 by this court. Wright v. Chase Home Fin. LLC, No. CV-11-0095-PHX-FJM, 2011 U.S. Dist.
22 LEXIS 58977, *9  (D. Ariz. June 2, 2011).   Plaintiff subsequently filed this Second
23 Amended Complaint ("SAC"), seeking damages, declaratory, and injunctive relief for alleged
24 wrongdoing with regard to a mortgage loan under the following theories: (1) breach of
25 contract; (2) violation of A.R.S. § 33-807.01; and (3) breach of the covenant of good faith

1   and fair dealing. Defendant moves to dismiss for failure to state a claim.[1]

2   We first address plaintiff's breach of contract claims. Claims one and two allege
3   breach of contract, and claim two includes a request for injunctive and declaratory relief to
4   prevent foreclosure of the property and declare that defendant breached the contract.
5   Defendant first moves to dismiss claims one and two because plaintiff cannot pursue a claim
6   for breach of the TPP. Defendant initially argues that the TPP is not an enforceable contract.
7   Alternatively, even if the TPP is enforceable, defendant argues that there is no breach or
8   damages because plaintiff received the permanent loan modification she claims she was
9   promised.

10   "To prevail on a claim for breach of contract, the plaintiff must prove the existence
11   of a contract between the plaintiff and defendant, a breach of the contract by the defendant,
12   and resulting damage to the plaintiff." Frank Lloyd Wright Found. v. Kroeter, 697 F. Supp.
13   2d 1118, 1125 (D. Ariz. 2010). HAMP itself does not contain a private right of action. See
14   Puzz v. Chase Home Fin., 763 F. Supp. 2d.1116, 1122 (D. Ariz. 2011). Whether the TPP
15   itself can constitute the basis for a breach of contract suit is an unsettled question, though
16   most courts considering whether a TPP creates an enforceable agreement have dismissed
17   such claims. See Rackley v. J.P. Morgan Chase Bank, N.A., No. SA-11-CV-387-XR, 2011
18   WL 2971357, at *3 (W.D. Tex. July 21, 2011) (collecting cases). Courts have also denied
19   a number of state law breach of contract claims on the theory that a claim based on "conduct
20   that is arguably violative of HAMP guidelines is not 'sufficiently independent' of HAMP to
21   avoid preclusion as an attempt at a private action to enforce HAMP." Fletcher v. OneWest
22   Bank, FSB, ___ F.Supp.2d ___, No. 10 C 4682, 2011 WL 2648606, at *4 (N.D. Ill. June 30,
23   2011) (quoting Wigod v. Wells Fargo Bank N.A., No. 10 CV 2348, 2011 WL 250501, at *4-

---

[1] The SAC originally included additional defendants Tiffany & Bosco, P.A., Mark S. Bosco and Jane Doe Bosco, Mark S. Bosco dba MERS, Inc., Mortgage Electronic System, Inc., and Crestar Mortgage. In the Rule 16 conference held before this Court on August 4, 2011, all defendants other than Chase were dismissed pursuant to plaintiff's agreement and court order.

- 3 -

1    *5 (N.D. Ill. Jan. 25, 2011)).  However, these rulings do not cite a "general rule" stating that
2    "where a state common law theory provides for liability for conduct that is also violative of
3    federal law, a suit under the state common law is prohibited so long as the federal law does
4    not provide for a private right of action."  Id. at *4.  Absent congressional direction that
5    HAMP was intended to have preemptive effect, the court in Fletcher declined to prevent
6    plaintiff from pursuing state common law contract remedies, noting that "[i]f mortgages
7    whose terms are prescribed by OTS can still be enforced through contract law, it seems
8    logical that a TPP, if it appears to fit the legal definition of a contract, can also provide the
9    basis for a suit under state law even if its terms are prescribed by the federal government."
10   Id.  In short, "[w]hy should the fact that [defendant] contracted to follow federal law prohibit
11   [plaintiff] from holding it to that contract?"  Id.  We agree.

12         Plaintiff does not allege that the TPP promised her a permanent loan modification
13   agreement.  Instead, plaintiff asserts that the TPP is an enforceable contract which imposed
14   a duty on the defendant to a) allow plaintiff to pay a lower trial plan payment of $1,240, with
15   those payments to apply to the debt she owed under her original mortgage, b) consider a
16   permanent loan modification in good faith, and c) to lower plaintiff's mortgage payment if
17   plaintiff qualified.   The TPP was breached, plaintiff asserts, by a permanent loan
18   modification that offered higher payments and more onerous terms than plaintiff's original
19   mortgage and failure to credit the payments plaintiff made as part of her compliance with the
20   TPP.

21         The court first addresses plaintiff's claim that defendant breached the TPP by offering
22   a loan modification agreement with higher payments. With respect to this argument, plaintiff
23   has not pled sufficient facts amounting to a breach.  Contrary to plaintiff's allegations that
24   defendant promised to lower plaintiff's original payment should she qualify, the TPP
25   expressly indicates that the trial period payment is an "estimate" of the monthly payment
26   under a permanent loan modification, and that the lender would determine the final payment
27   amount.  Pl's Compl., Ex. A.  Nowhere in the TPP does defendant promise that payments
28

- 4 -

under a permanent loan modification, if approved, would be lower than either plaintiff's original payments or her trial period payments. Thus, plaintiff's argument that defendant breached the TPP by offering a permanent loan modification with more onerous terms fails to state a claim for breach of contract. To the extent that claims one and two allege a breach of contract to provide plaintiff with a permanent loan modification with more favorable terms than her original mortgage, we dismiss them.

Plaintiff also alleges as part of her breach of contract claim, however, that defendant breached the TPP by failing to credit payments she made under the plan. Specifically, plaintiff claims that she paid the $1,240 trial payment to defendant from November 2009 to July 2010. In September 2010, plaintiff received a letter from defendant's counsel stating that she owed defendant "11 Monthly Payment(s) at $1,819.89" from the period from November 1, 2009 to September 1, 2010. Pl's Compl., Ex. C. This higher amount represented the "normal payment" for plaintiff's loan. Pl's Compl. at 6. The defendant does not address this argument, instead circling back to the widely accepted premise that there is no obligation under either HAMP or the TPP to modify plaintiff's loan terms. The court agrees with that proposition, however the proposition standing alone does not address plaintiff's claim that defendant failed to credit payments made by plaintiff during the TPP, an obligation that plaintiff claims was part of the TPP agreement.

Viewed in the light most favorable to the plaintiff, a court could find that defendant breached the TPP by failing to credit payments plaintiff made during the trial period to the amount owed on her original loan. The TPP expressly states that if the TPP terminates, any payment that plaintiff made under the TPP "shall be applied to amounts [] owe[d] under the Loan Documents" (defined in the TPP as the original mortgage and note). Pl's Compl., Ex. A. Based on the September 2010 letter plaintiff received, which states that plaintiff owed defendant eleven monthly payments, plaintiff's claim that defendant failed to credit payments as required with respect to payments made under the TPP between November 2009 and July 2010 is plausible. Plaintiff has pled damages including loss of credit, legal expenses, and

- 5 -

what she alleges was an obligation to file a bankruptcy proceeding to forestall forfeiture. Because plaintiff has pled the required elements of a breach of contract claim, we deny defendant's motion to dismiss claims one and two.

Plaintiff's third claim for relief alleges a violation of A.R.S. § 33-807.01. Section 33-807.01 states that before a trustee can give notice of a trustee's sale of applicable residential property, the "lender must attempt to contact the borrower to explore options to avoid foreclosure at least thirty days before the notice is recorded." A.R.S. § 33-807.01(A)(2010). The statutory language does not provide a private cause of action. However, even assuming that one exists and accepting as true plaintiff's allegations that defendants either have noticed a trustee's sale of plaintiff's property or will be doing so, plaintiff fails to plead a violation of A.R.S. § 33-807.01.

Defendant's permanent loan modification agreement offer is dated July 6, 2010. This agreement, by its express language, provided an opportunity for plaintiff to bring her loan "current." Pl's Compl., Ex. B. The date of the alleged notice of trustee sale of plaintiff's property is absent from plaintiff's allegations. Notably, plaintiff does not allege a trustee's notice of sale was recorded less than thirty days after plaintiff received her permanent loan modification offer from defendant. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1950 (2009) (quoting FED. R. CIV. P. 8(a)(2)). Because plaintiff fails to state a plausible claim for relief under A.R.S. § 33-807.01, we grant defendants' motion to dismiss claim three.

Finally, we address plaintiff's allegation of a violation of the covenant of good faith and fair dealing. "Arizona law implies a covenant of good faith and fair dealing in every contract," which prohibits a party to a contract from "doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,

201 Ariz. 474, 490, 38 P.3d 12, 28 (2002).  In claim four, plaintiff alleges that defendant violated the covenant with respect to the TPP when it lured plaintiff into believing that she would be considered for a lower mortgage payment after completing the trial period, and threatened forfeiture without recording any notice of sale.

Even assuming plaintiff's assessment of defendant's motivation is correct, the TPP does not contain any promise to permanently lower plaintiff's monthly payments as part of a permanent loan modification offer.  In addition, the TPP explicitly states that if the plan terminated, the lender would "have all of the rights and remedies provided by the Loan Documents."  Pl's Compl., Ex. A.  The TPP, in other words, was not a promise by defendant to permanently refrain from initiating forfeiture or foreclosure actions.  Thus, defendant could not have impaired the rights provided to plaintiff in the TPP under this theory. However, the plaintiff also claims that the covenant of good faith and fair dealing was breached when defendant failed to credit payments plaintiff made under the TPP.  As the TPP indicated that payments "shall be applied" to the original mortgage, Pl's Compl., Ex. A., a liberal reading of the complaint suggests that defendant's failure to credit plaintiff's payments prevented plaintiff from receiving the benefits of the TPP's terms.  We therefore deny defendant's motion to dismiss claim four.

The August 4, 2011 Rule 16 scheduling order (doc. 22) noted that no further motions to amend the complaint or join additional parties would be entertained.  Therefore, **IT IS ORDERED GRANTING IN PART AND DENYING IN PART** defendant's motion to dismiss (doc. 19).  Claim three is dismissed with prejudice.  Defendant's motion to dismiss counts one, two, and four is denied.  We once again strongly urge plaintiff to seek the advice of counsel.

DATED this 14th day of September, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

- 7 -